UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOE HAND PROMOTIONS, INC.,

Plaintiff,

DECISION AND ORDER
6:25-CV-06684-MAV

-vs-

RICARDO NIEVES and LAXY BUSINESS VENTURES LLC D/B/A/ PORTO ROC SOXIAL LOUNGE,

Defendants.

## INTRODUCTION

Plaintiff Joe Hand Promotions, Inc. brings claims under 47 U.S.C. § 605 and 47 U.S.C. § 553 against Defendants Laxy Business Ventures LLC ("Laxy") and Ricardo Nieves ("Nieves"), individually and as officer, director, shareholder, principal, manager and/or member of Laxy (collectively, "Defendants"). ECF No. 1. Nieves is proceeding *pro se* in the action and no counsel has entered an appearance on behalf of Laxy. Defendants failed to file an answer or otherwise move with respect to the complaint within the time limits set by the Federal Rules of Civil Procedure. Plaintiff requested the Clerk enter default against Defendants and on April 1, 2026, default was entered. ECF Nos. 8, 9. Pending before the Court is Nieves' motion to vacate entry of default (ECF No. 11) and Plaintiff's motion for default judgment (ECF No. 10). For the reasons stated below, Nieves' motion (ECF No. 11) is granted in part as to himself and denied in part as to Laxy and Plaintiff's motion for default judgment (ECF No. 10) is dismissed in part as moot as to Nieves.

## BACKGROUND

The following facts are taken from the complaint, Plaintiff's motion for default judgment and Nieves' motion to vacate the entry default. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (noting that in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor).

Plaintiff's allegations in the complaint involve the unauthorized exhibition of a televised boxing match by Nieves at his establishment on July 11, 2025 (the "Broadcast"). ECF No. 1 at 4.[1] Plaintiff is the exclusive United States commercial distributor of the Broadcast which aired on July 11, 2025. *Id.* at 2. By contract, Plaintiff was granted the right to distribute the Broadcast, including all undercard matches and the entire television broadcast, via encrypted closed-circuit television, encrypted satellite, radio signals and/or digital streaming technology. *Id.* Plaintiff entered into subsequent licensing agreements with various entities in the State of New York, allowing them to publicly exhibit the Broadcast to their patrons. *Id.* at 5.

According to the complaint, on the night of the Broadcast, "Defendants and/or their agents, servants, workmen or employees, without paying Plaintiff a fee or entering into an agreement with Plaintiff . . . unlawfully intercepted, received and/or de-scrambled Plaintiff's encrypted signal and did exhibit the Broadcast . . . ." *Id.* at 6. Plaintiff further alleges that Nieves exhibited the Broadcast for commercial advantage. *Id.* Plaintiff alleges Nieves had supervisory capacity and control over the

---

1 The page numbers cited in this Decision and Order refer to the pagination inserted by the Court's CM/ECF system in the upper right-hand corner of the document.

activities at Laxy. *Id.* at 3.

Plaintiff states various illegal and unauthorized methods of accessing the Broadcast. *Id.* at 7. For example, Plaintiff notes that the Broadcast was available for non-commercial, private viewing via Pay-Per-View through streaming apps or websites at residential rates lower than those for commercial entities. *Id.* at 5. Plaintiff states that "[o]wners of commercial establishments wishing to avoid paying Plaintiff's licensing fees can surreptitiously gain access to Plaintiff's Broadcasts by purchasing the program through streaming apps. . . ." *Id.*

In its motion for default judgment, Plaintiff contends that on the night of the Broadcast, its auditor observed the Broadcast "being exhibited on four televisions throughout the premises, while patrons were present . . . [and] observed a 'Netflix Live' watermark displayed on the Broadcast, confirming that the program was being transmitted through an unauthorized streaming method." ECF No. 10-1 at 4. Nieves states in his motion, "[t]he broadcast was accessed through a Netflix subscription." ECF No. 11-2 at 6.

On November 11, 2020, Plaintiff filed the complaint against Defendants alleging violations of the Federal Communications Act, 47 U.S.C. § 605, and the Cable & Television Consumer Protection Competition Act, 47 U.S.C. § 553. ECF No. 1. Nieves executed a waiver of service, signed by counsel, on January 5, 2026. ECF No. 7.

On April 1, 2026, Plaintiff requested the Clerk enter default against Defendants as they had not answered or otherwise moved with respect to the

complaint. ECF No. 8. The Clerk entered default on April 1, 2026. ECF No. 9.

On April 21, 2026, Plaintiff moved for a default judgement against Defendants. ECF No. 10. On April 30, 2026, Nieves moved *pro se* to vacate the entry of default. ECF No. 11. The motion to vacate was fully briefed on May 14, 2026. ECF Nos. 12–15.

## NIEVES' PRO SE STATUS

At the outset, the Court must address the issue of Nieves' *pro se* status. The Second Circuit has made it clear that "a limited liability company . . . may appear in federal court only through a licensed attorney." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007). Nieves is advised that he cannot represent Laxy *pro se*. Thus, the motion to vacate the entry of default (ECF No. 11) serves as a motion only on Nieves's behalf, and Laxy has not yet moved regarding the entry of default.

Accordingly, the motion to vacate the entry of default as to Laxy is DENIED without prejudice, subject to renewal after Laxy obtains a licensed attorney to represent it. If Laxy intends to move to vacate the entry of default, it must obtain counsel, and its counsel must file, within forty-five (45) days of the entry of this Decision and Order, a notice of appearance, along with a motion to vacate the entry of default.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedural process for a plaintiff to obtain a default judgment. Fed. R. Civ. P. 55. "First, a plaintiff must seek entry of default where a party against whom he seeks affirmative relief has

failed to plead or defend in the action." *Harring v. Pinkcey*, 342 F.R.D. 47, 50 (W.D.N.Y. 2022). "'Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b).'" *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

Rule 55 also governs a motion to vacate an entry of default. Fed. R. Civ. P. 55(c). Federal Rule of Civil Procedure 55(c) allows the Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "'Because Rule 55(c) does not define the term good cause, [the Second Circuit] ha[s] established three criteria that must be assessed in order to decide whether to relieve a party from the default or from default judgment.'" *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). These criteria are: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96.

"Vacating an entry of default 'under Rule 55(c) is left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.'" *McClain v. Gelormino*, 9:17-CV-0046 (LEK/ML), 2021 WL 4477192, at *3 (N.D.N.Y. Sept. 30, 2021) (quoting *Enron Oil Corp.*, 10 F.3d at 95). Additionally, "[i]t is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." *Peckarsky*, 249 F.3d at 174. "Default judgments are thus 'reserved for rare occasions' and any 'doubt[s] should be resolved in favor of the

defaulting party.'" *U.S. Fidelity and Guar. Co. v. Petroleo Brasileiro S.A.*, 220 F.R.D. 404, 406 (S.D.N.Y. 2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96).

"[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

## DISCUSSION

### 1. Willfulness of Defendants' Default

"As to the first factor, courts in this circuit have recognized that 'willfulness' in the context of a motion for a default judgment requires more than a showing of carelessness or negligence and is more akin to bad faith or a demonstration that the defaulting party has engaged in culpable conduct." *Fashion Fragrance & Cosmetics v. Croddick*, No. 02CV6294(WK), 2003 WL 1824638, at *2 (S.D.N.Y. Apr. 8, 2003). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 731, 738 (2d Cir. 1998).

"A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." *Enron Oil Corp.*, 10 F.3d at 96.

Plaintiff alleges that Nieves cannot demonstrate that his default was not willful. ECF No. 12 at 4. However, Nieves argues in his motion that his *pro se* status, unfamiliarity with the Federal Rules of Civil Procedure, and ongoing settlement

negotiations with Plaintiff are the true cause of their default. ECF No. 11-2 at 7–13. The Court agrees with Nieves.

Nieves argues that between October 2025 and April 2026 he and Plaintiff exchanged multiple emails and phone calls regarding settlement offers. *Id.* Nieves attached a series of emails to his motion to support his argument. ECF No. 11-3. These emails purport to show Nieves corresponding with Plaintiff through a Claims Resolution Manager and negotiating a settlement. *Id.*

Nieves additionally argues that although he did not timely file an answer with this Court, he was under the impression that emailing a copy of the answer on letterhead to Plaintiffs was sufficient, and he did so on December 3, 2025, December 22, 2025, March 16, 2026, March 17, 2026, and March 18, 2026. ECF Nos. 11-2 at 5, 11-3 2–12. Nieves' argument of unfamiliarity with the Court's rules and procedures is also evidenced by the fact that he was unaware that he could not represent Laxy *pro se*. Still, once Plaintiff filed a motion for default judgment on April 21, 2026, Nieves promptly responded with a motion to vacate the entry default on April 30, 2026. ECF Nos. 10, 11.

Resolving all doubts in favor of Nieves as the moving party, given Nieves' *pro se* status and the ongoing discussions with Plaintiff regarding settlement, the Court finds little to no evidence that the failure to answer the complaint was willful. *U.S. Fidelity and Guar. Co.*, 220 F.R.D. at 406; *See also Enron Oil Corp.*, 10 F.3d at 98 (noting that default was not willful where a pro se party made "a good faith effort to adhere to the rules of the court and protect his rights").

### 2. Prejudice to Plaintiff

"[D]elay alone is not enough to establish prejudice . . . the delay must 'thwart [claimant's] recovery or remedy, result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *County of Monroe v. Siemens Indus, Inc.* 833 F. Supp. 3d 267, 279 (W.D.N.Y. 2026) (quoting *Green*, 420 F.3d at 110).

Plaintiff argues that "Defendants' delay has forced Plaintiff to incur additional costs and has prolonged the resolution of this matter." ECF No. 12 at 8. However, Plaintiff has not alleged any other reason for prejudice beyond delay of recovery. Therefore, the Court does not find prejudice towards Plaintiff in vacating the Clerk's entry of default.

### 3. Existence of a Meritorious Defense

"In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Peckarsky v. Galaxiworld.com Ltd*, 249 F.3d 167, 173 (2d Cir. 2001). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (quoting *Enron Oil Corp.*, 10 F.3d at 98).

In the context of vacating an entry of default judgment, the Second Circuit has articulated that "[t]o satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). "'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de*

*Colorants v. Aakash Chemicals & Dyestuffs, Inc.* 856 F.2d 873, 879 (7th Cir. 1988)). "[C]ourts in this Circuit routinely recognize that a defendant need only 'meet a low threshold' to satisfy this factor." *Li v. Fleet N.Y. Metro Reg'l Ctr. LLC*, No. 21-CV-5185, 2022 WL 1666963, at *7 (E.D.N.Y. May 25, 2022) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)).

The defenses as to Nieves' liability regarding the Broadcast are unclear. For instance, it is unclear why Nieves, as an individual, is responsible for the conduct of his LLC. Regardless, in weighing the factors of willfulness and prejudice and in light of Nieves' *pro se* status, the Court does not find the lack of a clear meritorious defense fatal to Nieves' motion to vacate the entry of default. *See Enron Oil Corp.*, 10 F.3d at 96 ("[A]s a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*").

**4. Other Equitable Considerations**

The Second Circuit "generally disfavor[s]" default judgments and particularly so where "[u]pholding Defendant[s'] default, especially for a *pro se* party, would 'bring about a harsh or unfair result.'" *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 198 (E.D.N.Y. 2025). Defaults "are particularly disfavored by the law when substantial rights are implicated or when substantial sums of money are demanded." *Enron Oil Corp.*, 10 F.3d at 97.

As noted above, Nieves repeatedly engaged in settlement discussions with Plaintiff and his lack of filing their answer was due to his confusion as a *pro se* party. Plaintiff is requesting in its motion for default judgment over $30,000 in damages

from Defendants resulting from the single Broadcast alleged in the complaint. ECF No. 10-15 at 2. While the motion for default judgment alleges other additional broadcasts by Defendants, these do not appear in the complaint, which only references a Broadcast on July 11, 2025. ECF Nos. 1, 10-1 at 5.

As Nieves is *pro se*, there was no willfulness in default, or prejudice in setting aside default, and a default judgment could result in a substantial sum of money entered against Nieves, the Court concludes that the relevant factors weigh in favor of vacating the entry of default.

**5. Bond as a Condition for Vacatur**

"District courts have the inherent power to place conditions on the vacatur of default." *Smith as Tr. of Loc. 966 Health Fund v. Bedford Stuyvesant Restoration Corp.*, No. 24-CV-04320 (FB) (LKE), 2025 WL 3637497, at *2 (E.D.N.Y. Dec. 16, 2025). "An award of attorneys' fees and costs upon vacating an entry of default does not require a finding of willfulness on the part of the defaulting party." *Joseph v. Ceide*, No. 24-cv-6572 (BMC), 2025 WL 3199069, at *5 (E.D.N.Y. Nov. 17, 2025). "Rather, the 'power to impose a reasonable condition on the vacatur' allows the Court to balance any 'undue prejudice' to the movant against this Circuit's 'preference for resolving disputes on the merits.'" *Id.* (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514–15 (2d Cir. 2001)). "In addition, to the extent there is reason to be concerned about a defendant's ability to pay a judgment, the Court may require the defendant to post a judgment bond." *Id.*

Here, Plaintiff requests that if vacatur is granted, Nieves be required to post a bond with the Court in the amount of $25,000. ECF No. 12 at 9. Plaintiff requests

that specific amount, presumably based on their request of approximately $30,000 in damages in their motion for default judgment. ECF No. 10-1 at 13–14. As a part of those damages, Plaintiff requests $20,000 as enhanced damages due to "Defendants' willful conduct." *Id.* at 10.

"'To determine whether willful conduct justifies an award of enhanced damages, the court considers whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.'" *Joe Hand Promotions, Inc. v. Bernal,* No. 18-CV-85 (ILG) (SJB), 2019 WL 885930 at *5 (E.D.N.Y. Feb. 22, 2019) (quoting *J & J Sports Productions Inc., v. El Sonador Café Restaurant Inc.*, No. 17-CV-3357, 2017 WL 6397731, at *5 (E.D.N.Y. Dec. 14, 2017)).

Without reaching the merits of Plaintiff's argument for enhanced damages, the Court notes that the motion for default judgment goes beyond the allegations of the complaint in asserting willful conduct. There are no mentions of repeated violations in the complaint, there are no allegations of unlawful monetary gains by Nieves, and no allegations of a cover charge or premiums for food and drinks. Indeed, Plaintiff only cites the Neives' advertisement of the Broadcast in the complaint. ECF No. 1-1.

Here, there may be concern over Nieves' ability to pay a judgment. ECF No 11-3 10–11. Neives asserted that he may have to consult a bankruptcy attorney and that he could not afford a settlement offer of $5,000. *Id.* at 10. However, the Court is not persuaded that a bond of $25,000 accurately reflects a final judgment at this stage in the litigation. As such, the Court declines to impose a bond of $25,000 on Nieves as a

condition of vacatur.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY

ORDERED that Nieves' motion to vacate entry of default [ECF No. 11] is GRANTED IN PART as to Nieves; and it is further

ORDERED that the motion to vacate entry of default [ECF No. 11] is DENIED without prejudice as to Laxy and subject to renewal after Laxy obtains a licensed attorney to represent it; and it is further

ORDERED that if Laxy intends to move to vacate the entry of default, it must obtain counsel, and its counsel must file, within forty-five (45) days of the entry of this Decision and Order, a notice of appearance, along with a motion to vacate the entry of default; and it is further

ORDERED that Plaintiff's motion for a default judgment [ECF No. 10] is DISMISSED IN PART as moot as to Nieves; and it is further

ORDERED that the Clerk of the Court is directed to vacate the entry of default against Nieves [ECF No. 9], and Nieves is directed to file an answer or so otherwise move regarding the complaint within thirty (30) days of this order;

SO ORDERED.

Dated: November 4, 2026
Rochester, New York

ENTER:

Meredith Vacca

HON. MEREDITH A. VACCA
United States District Judge